Filed 3/20/25  In re N.D. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re N.D., a Person Coming Under the Juvenile Court Law. | B334119 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>Y.L.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. 23LJJP00314A) |

        APPEAL from orders of the Superior Court of Los Angeles County, Jennifer W. Baronoff, Juvenile Court Referee.  Affirmed.
        Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Jane Kwon, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant Y.L. (father) appeals from juvenile court jurisdictional findings and dispositional orders asserting dependency jurisdiction over minor child N.D.  We affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Facts

In 2013, the juvenile court sustained allegations that N.D. was endangered by her mother's conduct.  The court gave father sole custody of N.D.

On September 15, 2023, the Los Angeles County Department of Children and Family Services (DCFS) received a referral indicating that father "whooped" N.D. on the buttocks with a belt.  N.D. was 16 years old at the time.  N.D. told mother about the incident and mother picked her up from school.  Mother then contacted law enforcement.  N.D. told Los Angeles Sheriff's Department deputies that father spanked her with a belt two times on September 13 because he was upset that a friend gave her a ride home from school.  She said father also spanked her with a belt, including the belt buckle, eight or 10 times in July of 2022 after learning that she had a Snapchat account.  N.D. reported that it was "common" for father to hit her with a belt, but she also said the two specific instances she described were "the only notable occurrences."

The deputies took N.D. to a hospital for a medical evaluation.  She reported pain and had a green and yellow, six-

2

by-five centimeter bruise on her right buttock, which was diagnosed as a hip contusion. According to N.D.'s medical records, a contusion is a deep bruise resulting from "a blunt injury to tissues and muscle fibers under the skin" which can be painless or "may stay painful and swollen for a few weeks." N.D. told a nurse that father hit her twice with a belt on September 13 after learning that she got a ride home from school. She also reported that father said, " ' "you are lucky I only hit you twice, I wanted to hit you more. Stop crying or I will hit you more." ' "

The deputies also interviewed father on September 15. He said that he caught N.D. having a relationship with a boy and texting the boy about how to sneak into father's home. Father had tried talking to N.D. about "how dangerous it is" to have boys inside the home. Father disciplined N.D. on September 13 "but only with a belt to her buttocks twice, and did not aim for her face, back or any other areas." He said that he only used the belt for disciplinary purposes.

A DCFS social worker interviewed mother and N.D. on September 15. N.D. told the social worker that on September 14, father found a photo of her with a boy from school. Father became "extremely upset" because he did not allow N.D. to have a boyfriend. N.D. said this was not the first time he used a belt for discipline, and she reported that father did not know how to communicate with her other than yelling at her, insulting her, or using the belt. She had bruises on her buttocks from father spanking her with a belt. N.D. ran away from father's home that evening. She called mother and told her that she did not feel comfortable or safe staying with father, and mother picked her up. N.D. was afraid father would hit her again if she went home.

She said he had hit her previously, but she did not report those incidents because she was afraid.

A DCFS social worker interviewed father on September 18. He admitted to using a belt to discipline N.D. "but he only hit her twice." Father asserted he was right to discipline N.D. however he wanted, including with a belt. He was "adamant" that he did not do anything wrong. Father said his actions were justified because N.D. snuck out with a boy and disobeyed father's rules. Father was not aware that hitting a child with a belt over their clothes could leave marks and he did not know if N.D. had bruises. Paternal grandmother told a DCFS social worker that father was strict and may have anger issues, but she did not know he had used a belt for disciplinary purposes.

In October, father told a DCFS social worker that he usually disciplined N.D. by taking away her electronics or limiting her activities. Father reported that he had only spanked her with a belt on two occasions. According to father, on September 14 he found pictures on N.D.'s phone depicting "a man sneaking into her room, in [father's] house," and father became scared because he did not know the man. He later learned that N.D. had a boyfriend and spanked her with a belt. Later that day, "after cooling off," father spoke to N.D. "about being safe and careful" and instructed her to not lie to him. Father explained that the first time he spanked N.D. with a belt, two years earlier, was after he found out N.D. "was talking with men" on Snapchat. Father was "shocked" that N.D. was behaving rebelliously. He reported that he had not been "worried about the law, DCFS, or [the] Court" when he spanked N.D., but he now understood the law and would not spank her with a belt again.

4

In October, N.D. told a DCFS social worker that father had spanked her with a belt on two occasions, sometimes spanked her with an open hand, and typically took away her phone as discipline. She reported that a few weeks before the September 2023 incident, father found out she had a boyfriend and instructed her to have no further contact with the boy. On September 13, she was walking home from school when the boy's mother saw her and offered a ride home. N.D. accepted the offer. Father became "upset" when he learned about this and he hit her " 'hard' " with a belt two times. It was painful and N.D. cried. The belt left two red marks which later bruised. N.D. did not tell father about the marks or bruises. N.D. also reported that father spanked her " 'hard' " with a belt five or eight times on July 25, 2022, after learning she had a Snapchat account. Father had drunk two beers, but N.D. denied that he was intoxicated. N.D. cried. The belt left one mark which later became a bruise. On both occasions, father called N.D. a " 'bitch and a hoe.' " N.D. reported that father felt "betrayed because she disobeyed his rules as he expects a lot from her." She felt safe in father's home and wanted to remain there, but she added that "they were just not seeing things eye to eye" and continued to experience "tension."

In early December, N.D. told a DCFS social worker that she continued to have disagreements with father. Specifically, on December 6, father "caught" her talking to a boy on FaceTime, became angry, and called her " ' "selfish" ' " and an " ' "idiot." ' " N.D. reported that father took away her phone and television but did not physically discipline her. N.D. said she felt safe in the home. Father confirmed that he disciplined N.D. for talking to a boy on FaceTime but he denied yelling at her or calling her

5

names.  Father told the social worker " 'he was just trying to talk to [N.D.]' " and " 'just wants her to be honest with him.' " According to father, N.D.'s grades were falling " 'because of [N.D.] having visits with her mother.' "

Paternal grandmother, paternal aunt, and father's ex-girlfriend each separately reported to a DCFS social worker that they had no concerns about father physically abusing N.D.

Father applied to the Father Strong parenting program on October 12, and as of December 12 his enrollment was still pending.  On December 18, father was on a waitlist for individual and joint counseling.

**II.    Procedure**

On September 19, 2023, DCFS filed a Welfare and Institutions Code section 300 petition as to N.D.[1]  The petition alleged that N.D. had "suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian" and that father failed to adequately supervise or protect N.D. from serious physical harm.  The petition further alleged that father "physically abused" N.D. by striking her buttocks with a belt on at least two occasions, that this abuse was excessive and caused unreasonable pain and suffering, and that it endangered N.D.'s physical health and safety and put her at risk of serious physical harm, damage, and danger.

At the December 18, 2023 adjudication hearing, father argued that the court should dismiss the petition because spanking N.D. with a belt was reasonable discipline and because

---

[1]     All further undesignated statutory references are to the Welfare and Institutions Code.

evidence of bruising did not compel a finding of child abuse.[2] Father further argued that there was no risk of future harm because he had enrolled in services and N.D. reported feeling safe in his home.

The court sustained the petition and found true the jurisdictional allegations.  It explained:

> This was not a disciplinary measure reasonable in kind and degree.  [¶]  [N.D.] reported she had marks and bruises on her bottom.  That was certainly consistent with the finding on the medical records.  According to the exam, she had green- and yellow-colored bruises to her right buttocks.  The patient [N.D.] also showed the physicians a picture of her bruise that she took on the day of the incident.  It had two patterned bruises to the right buttocks.

> The court is also, in looking at the totality of the circumstances, not only looking at the black belt folded in half hitting her, but I'm also looking at -- and I would note that [N.D.] reported it hurt and she started to cry.

> I'm also looking at the fact that it has happened before, that she is a teenager, and that there were

---

[2]     Father cited a case describing the parental disciplinary privilege in the context of child abuse reporting, and recognizing, in dicta, that dependency law " 'provides that in the absence of 'serious physical injury,' the 'serious physical harm' that will warrant assertion of juvenile court jurisdiction 'does not include reasonable and age-appropriate spanking to the buttocks.' " (*Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, 86, fn.11 (*Gonzalez*), quoting § 300, subd. (a).)

statements that -- by [N.D.] that at least during one of the incidents her father was under the influence of alcohol. She reported he had had two beers. She denied he was drunk or intoxicated, but that's something the court is considering.

The court is also considering statements from the J.D.X. report that the father was extremely upset and called her a bitch and a ho from the situations that she was in, in addition to the use of the belt to hit her.

So this is -- the court is kind of looking at the whole picture, and based on the derogatory language, the possible use of alcohol, as well as the bruising, [N.D.]'s age, the fact that it happened more than once, and that she -- it caused her to run away to her mother because she was fearful of her father, there is no world in which that this was reasonable discipline in kind and degree.

This is normal teenage behavior that was met with -- that was met with physical abuse. And so the court is sustaining this as an A-1 and B-1.

Father did not object to the juvenile court's ruling or its reasoning.

On December 22, at the disposition hearing, the court declared N.D. a dependent of the court, released her to father, and ordered family maintenance services.

Father timely appealed the juvenile court jurisdictional findings and dispositional orders.

8

## DISCUSSION

Father argues that the juvenile court erroneously sustained jurisdictional allegations that N.D. suffered or would face a substantial risk of harm. For the following reasons, we disagree.

## I.   Applicable Law and Standard of Review

The juvenile court may assume dependency jurisdiction if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." (§ 300, subd. (a).) The court may also exercise jurisdiction after finding "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] (A) The failure or inability of the child's parent or guardian to adequately supervise or protect the child." (*Id*., subd. (b)(1)(A).)

"For purposes of [section 300, subdivision (a)], a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian that indicate the child is at risk of serious physical harm. For purposes of this subdivision, 'serious physical harm' does not include reasonable and age-appropriate spanking to the buttocks if there is no evidence of serious physical injury." (§ 300, subd. (a).) The latter limitation is consistent with "the long-standing principle of California law that ' "a parent has a right to reasonably discipline his or her child and may administer reasonable punishment . . . ." ' " (*In re D.M.* (2015) 242 Cal.App.4th 634, 640–641 (*D.M.*).)

We review jurisdictional findings " ' "in the light of the *whole record*" ' 'to determine whether it discloses substantial

evidence—that is, evidence which is reasonable, credible, and of solid value . . . .' " (*In re I.C.* (2018) 4 Cal.5th 869, 892.) " 'In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' " (*In re R.T.* (2017) 3 Cal.5th 622, 633 (*R.T.*).) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re E.E.* (2020) 49 Cal.App.5th 195, 206.)

## II. Substantial Evidence Supports the Juvenile Court's Jurisdictional Findings

Father first argues that there was insufficient evidence to support that N.D. suffered serious physical harm or physical abuse. We disagree. There is no dispute that father hit N.D. on her buttocks with a belt five to 10 times on July 25, 2022, and twice on September 13, 2023, leaving marks and bruises on both occasions. Father admitted that he hit N.D. with a belt, and N.D. reported the details of the two incidents consistently to DCFS social workers, medical professionals, and law enforcement. Her bruises from the September 2023 incident were observed by law enforcement, a DCFS social worker, and during a medical examination. She was diagnosed with a contusion, which medical records describe as a deep bruise that can "stay painful and swollen for a few weeks." N.D. also reported that it was "common" for father to use a belt for discipline, though the only specific instances she identified were the two described above. Based on the whole record, substantial evidence supports a finding that N.D. suffered serious physical harm as a result of

10

father's conduct.  (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 438 [punishment with a belt to stomach and forearms causing "deep, purple bruises" was sufficient to support a finding of serious physical harm]; cf. *Gonzalez, supra,* 223 Cal.App.4th at p. 92 [in the context of reporting child abuse to a federal database, recognizing that "the presence of lasting bruises or other marks may support a finding that a parent crossed the line between permissible discipline and reportable abuse"].)

Father asserts N.D.'s injuries were not severe enough to support a finding of serious physical harm.  However, the sole legal authority on which he relies, *In re Adam D.* (2010) 183 Cal.App.4th 1250, is inapposite.  In that case, the appellate court described a juvenile court's finding that a parent engaged in age-appropriate discipline by punishing the child with a belt and causing marks that lasted two days but did not bruise.  (*Id.* at p. 1254.)  That finding was not relevant to any issue on appeal and the appellate court's recitation of it is not persuasive or binding on this court.  (*Areso v. CarMax, Inc.* (2011) 195 Cal.App.4th 996, 1006 ["observations by an appellate court are dicta and not precedent"].)  Moreover, N.D.'s injuries were more severe.  The marks described in *Adam D.* lasted only two days, did not bruise, and apparently did not cause lasting pain; in contrast, N.D. was still in pain two days after the incident and still had a six-by-five centimeter green and yellow bruise.[3]

---

[3]  Father notes that N.D. told law enforcement that she experienced pain on the day father struck her.  He argues that this implies she was no longer in pain by the time she spoke to law enforcement, two days later.  However, N.D. reported pain to medical professionals after she spoke to law enforcement, indicating her pain lasted for at least two days.  In any case, to

Father also argues that he did not physically abuse N.D., but merely committed "inappropriate discipline." However, father fails to explain the legal significance of this supposed distinction. Father observes that " ' "serious physical harm" does not include reasonable and age-appropriate spanking to the buttocks' " (§ 300, subd. (a)), but he does not claim that he engaged in "age-appropriate spanking," nor does he articulate any reasoned argument that his admittedly *inappropriate* discipline qualifies for this exemption.

Next, father contends there was insufficient evidence to support the allegation that N.D. faced a substantial risk of serious physical harm in the future. We again disagree. Father contends the only evidence on this point related to father's past behavior. Yet, in assessing the current or future risk of harm, the juvenile court may consider a parent's previous conduct. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 424 [" 'a measure of a parent's future potential is undoubtedly revealed in the parent's past behavior with the child' "]; § 300, subd. (a) [in assessing the risk of future harm, the juvenile court may consider past injuries and "other actions by the parent or guardian that indicate the child is at risk of serious physical harm"].) Here, N.D.'s injuries combined with father's overall conduct support the juvenile court ruling. Father was "adamant" that he had the right to punish N.D. however he wanted, including with a belt. He admitted that he had disciplined N.D. before "cooling off," and stated that he "was not worried about the law, DCFS or [the] Court" when he struck her. Father had drunk two beers before one incident, and

the extent the record could support father's position, we view the evidence in the light most favorable to the juvenile court's ruling. (*R.T., supra*, 3 Cal.5th at p. 633.)

while N.D. reported that he was not intoxicated, he may have been at least somewhat impaired. These facts suggest father believed he was right to punish N.D. with a belt and did so without considering the consequences. In turn, the evidence supports a finding that there was a substantial risk father may use similar punishment in the future.

Father argues that there was no risk of future harm because he enrolled in services and said that he would no longer spank N.D. with a belt, and because N.D. eventually said she felt safe in the home. However, even if some evidence might support father's position, we view the record in the light most favorable to the juvenile court ruling. (*R.T.*, *supra*, 3 Cal.5th at p. 633.) Father also contends the juvenile court erred because it did not expressly state that its ruling was based on then-current circumstances.[4] He forfeited any such argument, however, by

---

[4] We recognize that there is a split of authority regarding whether a juvenile court may exercise jurisdiction based solely on a past incident of serious physical harm, without finding a risk of current or future harm. Some courts have held that "the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824, overruled on another ground in *In re R.T.* (2017) 3 Cal.5th 622, 629; see *In re Carlos T.* (2009) 174 Cal.App.4th 795, 805 [quoting *Rocco M.*].) Others have concluded that "an allegation that a child *has suffered* serious physical harm inflicted nonaccidentally by a parent or guardian is sufficient to establish jurisdiction . . . ." (*In re David H.* (2008) 165 Cal.App.4th 1626, 1644; *In re J.K.* (2009) 174 Cal.App.4th 1426, 1436 [following *David H.*].) We need not weigh in on this split, however, because we conclude that substantial evidence supports that N.D. suffered serious physical harm in the

13

failing to object after the juvenile court articulated its reasoning. (*In re D.P.* (2023) 92 Cal.App.5th 1282, 1292 (*D.P.*) ["In dependency proceedings, as elsewhere, a litigant forfeits an appellate argument by failing to raise it before the trial court"].) Moreover, " ' "[i]t is judicial action and not judicial reasoning which is the subject of review." ' " (*In re Jonathan B.* (1992) 5 Cal.App.4th 873, 876.) As we have discussed, the record as a whole supports the juvenile court's jurisdictional findings.

Father argues in the alternative that the juvenile court considered improper factors in its oral ruling. Father forfeited this claim by failing to raise it below. (*D.P.*, *supra*, 92 Cal.App.5th at p. 1292.) But even if he had preserved this contention, we would reject it. At the hearing, father argued that he had a right to reasonably discipline N.D. "Whether a parent's use of discipline on a particular occasion falls within (or instead exceeds) the scope of this parental right to discipline turns on three considerations: (1) whether the parent's conduct is genuinely disciplinary; (2) whether the punishment is 'necess[ary]' (that is, whether the discipline was 'warranted by the circumstances'); and (3) 'whether the amount of punishment was reasonable or excessive.' " (*D.M.*, *supra*, 242 Cal.App.4th at p. 641.) The juvenile court found that father's discipline was not reasonable, citing several specific circumstances. Father argues the juvenile court improperly considered that he drank two beers before punishing N.D. and "called her a bitch and a ho." Yet, both facts are relevant to whether the discipline was excessive— father's alcohol use suggests he was impaired and prone to act

---

past and that she was at risk of future harm at the time of the hearing.

unreasonably, and his use of derogatory slurs indicates he was unable or unwilling to control his temper. Father also claims the court improperly considered that N.D. ran away from home because she feared father, but the child's subjective reaction to physical discipline is at least somewhat probative of whether that discipline was excessive. Father further argues that the juvenile court erred in reasoning that he punished N.D. for "normal teenage behavior." However, this was plainly relevant to whether the discipline at issue was " 'warranted by the circumstances.' " (*Ibid.*)

Father relatedly contends the juvenile court failed to consider or determine whether his actions were "genuinely disciplinary." (*D.M.*, *supra*, 242 Cal.App.4th at p. 641.) Yet, the record is silent on this factor, and therefore we presume the court appropriately considered it in rendering its decision. (*Brewer v. Carter* (2013) 218 Cal.App.4th 1312, 1320.)

Finally, father argues that the juvenile court's dispositional orders must be reversed. This argument, however, is contingent on the success of father's challenge to the court's jurisdictional findings. Because we reject father's contentions as to the jurisdictional findings, we also reject his challenge to the dispositional orders.

**DISPOSITION**

The juvenile court orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


HANASONO, J.*


We concur:



EDMON, P. J.



ADAMS, J.

---